where the court is now sitting. God save the United States and this honorable court. Good morning. Please be seated. Welcome to the Fourth Circuit. Judge Floyd and I are joined today by the magic of television by our colleague Judge Shedd, who is a victim of hurricane or a captive of Hurricane Irma. So I think you've gotten instructions. You'll see on your screen when Judge Shedd wants to ask a question and he'll be raising his hand. So if you'll stop what you're doing when that happens. So our first case is United States v. Harris. Ms. Koenig, did I pronounce that right? That's Koenig, your honor. Koenig? Yes. Okay. I'm glad to hear from you. Good morning. May it please the court, the two issues on appeal in this case are whether the district court had jurisdiction to hear or to revoke Mr. Harris' initial term of supervised release twice and if so, whether the court sentenced Mr. Harris to more than the statutory maximum sentence on the two revocations. The trial court did not have jurisdiction over the second revocation of Mr. Harris' initial term of supervised release because the fourth addendum in this case, which was the subject of that second revocation, was not filed until after Mr. Harris had already been revoked the first time. If this court, however, finds that the district court had jurisdiction over the second revocation, the trial court's sentences violated the statute. He was serving his term when the addendum was filed, is that right? That's right, your honor. Why isn't that sufficient? Your honor, if we look at the court's holding in Winfield and Brown, which are the two cases from this court that come closest to this issue. In Winfield, the holding was that if all of the petitions are filed before the court has the first revocation, it's fine for the district court to bifurcate the proceeding Was that the holding or was that just the facts in that case? I think that the court is going to be limited in terms of interpreting Winfield to the facts of the case because the remainder of what the Winfield court would have said would be dicta if it's not strictly limited to the facts of that case. When we get to Winfield, one thing that we need to look at is that Winfield's problem really could be solved by 18 U.S.C. 3583I which gives the court jurisdiction to hear violations when the petition for revoking the supervised release is filed before the expiration of the term. So the question becomes when does the term end? The facts in Winfield tells us that the term that in Mr. Winfield's case, the court Let me ask a question. Do you think that if there is a complete separate revocation hearing and order and then the court later finds out about conduct that amounts to a basis to revoke that occurred before that revocation. So there's no question it's a complete separate revocation and you're going to have now a second revocation for conduct that occurred before the revocation. Is the court powerless to deal with that? If the court does not find out about that until after the first revocation, yes. And in this situation Let me ask this. So under your theory, then if a defendant is wily enough to hide something from the court, that's all to his advantage? Well, your honor, in terms of That would be either yes or no. The answer is to some extent yes. Because there are limits and as the court in Winfield, the court found that in Mr. Winfield's case, because all of the petitions had been filed before the revocation. Does it then make, what about conduct that occurred before the that the court finds out about during the revocation hearing? May that be considered? Or what if the court continues a revocation hearing? May the court look at that newfound information that occurred before to be considered in the revocation hearing? Your honor, if I want a yes or a no and then you can answer. If it happens before the revocation, the actual revocation, then yes. Does it make any difference to you in your analysis that the second petition was an addendum to the first revocation? It wasn't a completely new independent revocation petition. It was an addendum. Does that make any difference in your analysis? It doesn't, your honor, because ultimately the first petition was dismissed. So the only thing that was the basis of the second revocation was the fourth addendum. And because that's the procedural posture that gets us to the second revocation, that's the key distinction here in Mr. Harris' case versus Mr. Winfield's case. Yes, your honor. But addendum to you then doesn't mean anything. Addendum to the petition to you under the revocation guidelines whole scheme. An addendum to a petition is a completely separate revocation petition? That distinction doesn't matter in your analysis. It's a completely separate allegation, your honor. I know that, but you can have 30 different allegations at a revocation hearing. You can, but what it is, what the allegations are, I believe that that controls the analysis here. And that's the distinction between Mr. Harris' case and Mr. Winfield's case, because the allegation that Mr. Harris had been indicted on federal charges was what the subject of the fourth petition was. Well, why is it what controls this case the fact that the defendant here, Mr. Harris, was serving part of his original supervised release term? Why doesn't that control the analysis? That's what the Supreme Court seemed to indicate in its decision. Well, in Johnson, is that what the court is referring to? Right. So in Johnson, the Supreme Court in Johnson specifically limited its holding to the interpretation of 3583 E3 before the 1994 amendments to that subsection. Critical to the court's analysis in Johnson, and this was on page... So did the Supreme Court say that in its opinion, or is that just the gloss some folks have put on it since then? It is the gloss that the folks have put on it, because the Johnson court in the holding itself... Is that the Ninth Circuit's decision you're referring to? Well, the Wing decision, I think Wing's facts in terms of the procedural posture are different than Ms. Harris' case. In Wing, the court in Wing was looking at whether or not the conduct for the petition that was filed while Ms. Wing was serving her sentence, was that going to revoke her new term of supervised release? And the Wing court decided no. Let's not get too far off of the Ninth Circuit's opinion, because that's not binding on us. Sure. So going back to Johnson, Your Honor, in Johnson, the court said, as it was written before the 1994 amendments, subsection 3583 E3 did not provide, as it now does, that the court could revoke the release term and require service of a prison term equal to the maximum authorized link of a term of supervised release. And so in Johnson, the court was trying to determine, because there wasn't any clear authority for the court to impose supervised release after imposition of a term of imprisonment for the revocation, the court was trying to determine was there any basis... And they said that the release part might be over with, but the term of supervised release was ongoing. It had some effect, Your Honor. And so the Johnson court found that it had some effect to the extent that because... So it only gave partial jurisdiction? No, Your Honor. But the Johnson court wasn't looking at the situation that we have now. They were just trying to determine if the whole term that was originally imposed of supervised release had not yet expired, could the court put Mr. Johnson back on supervised release after the term of imprisonment for the revocation? And Winfield extended that and I know the court can't do anything about the holding in Winfield, but the facts of Winfield are distinct from Mr. Harris' situation. To get to a bottom line, it's a threshold jurisdictional question. Under Johnson and Winfield, it would seem fairly clear, at least in this circuit and most of the others, that the term of supervised release, even when there's a revocation, is still going. So the court would appear to have authority while that term is still extant. And in this case, that's when the court acted. Why is it divested of jurisdiction? To answer the court's question, I want to turn the court's attention to the Winfield Court's discussion of Brooks, which is an Eastern District of Virginia district. This is Judge Schitt. Would you just answer that question? Just answer it directly. The answer to the court's question is that the revocation ends the term of supervised release. So there are different ways to end a term of supervised release. That's not what Springbrook said. Well, we have to look at the facts as it relates to the holdings in Winfield and Brown. And I want to bring up the Brooks decision, because in Brooks, Mr. Brooks... I want to ask you a question. You claim there's not jurisdiction. And then you claim this is a separate revocation proceeding that's ongoing right now. So you claim there were two revocations in this case? Yes. So I want to be sure I understand your position. If you are wrong on jurisdiction, then you are subjecting your client to a second statutory maximum. That's your argument. That is not my position. It has to be. It has to be. If we have jurisdiction, why is he not subject to... If we have jurisdiction and you say this is a second revocation hearing, why is he not subject to the language, any such revocation with the statutory maximum? Because the court has one term of supervised release that it can look at. The initial term of supervised release. So the question is, can there be multiple revocations of the term of supervised release? Under Winfield, the answer is yes, as long as the petitions are filed before the first revocation occurs. No, no, that's just the facts of that case. That's not a requirement of that... That case did not say that was a requirement. Respectfully. That's just the facts of that case. Well, respectfully, I disagree, Your Honor, especially given 3583I, which contemplates that the jurisdiction for the court can extend past the expiration of the term, the initial term, if the petition is filed before the expiration of the term. Going to Brooks, in Mr. Brooks' situation, he had... The court had revoked his supervised release and allowed him to self-surrender to serve the term of imprisonment that was to follow. Mr. Brooks had committed a new infraction in between time from when the revocation happened and the term of imprisonment was to begin. And so the court in Brooks found that the expiration of the term happened at the time of revocation. If we look at the various times in Winfield, the revocation began... The term ended at the revocation. In Brooks, we have the term ended at the revocation. And in Brown, we have a limit on Winfield, I believe, where in Brown, the limit was the new term of supervision began. So we're talking about separate terms of supervision here. And so to the extent that the court finds it has jurisdiction in this case, we have to then move to the second issue, was whether or not... Do you then suggest to a district court judge having a petition for revocation, that what that judge should do is start the hearing, say I'm going to put you back in jail right now under my inherent authority, and I'm going to continue this hearing until the term of supervised release I've ordered expires in five years. That would solve your problem, wouldn't it? It would solve my problem, but I don't know that I'm proposing that as an alternative. In terms of thinking about policy arguments, Your Honor, the government has argued that my rule would propose a perverse incentive for people to come in and plead to technical violations in order to avoid the court finding out about more serious violations. And I think that that is the reality of how supervised release functions. Let me say this, from my experience as a district court judge, that's exactly what a smart lawyer would do, and I wouldn't blame them. They would come in and want to plead, no, they would want to plead to some technical violation, which is exactly the one in this case, failing to report early on that you spoke to a police officer. And they would try to clear the decks, and you couldn't blame them for doing that, under your theory. I think there's two issues, Your Honor. One is that the reality is that a lot of people who commit technical violations, there's no petition for supervised release filed until it gets to a more grave situation. The court is given a no-action report, the court reviews it, and if it becomes a sufficient problem, the court at that point then acts and a petition is filed. Doesn't it change from the 1988 to the 1994 statute kind of allow you argument, because they used the word in 1994 for supervised release without credit for time previously served on post-release supervision? Well, Your Honor, I think that that relates to how the PROTECT Act operates in relation to what we look at in terms of sentences for multiple terms of supervised release. So if someone is on an initial term of supervised release, is revoked, and given prison, followed by another term of supervised release, and then violates that they don't get credit for the time that was given for the violation of the first term of supervised release. When we get to going... You've reserved some time for rebuttal. Thank you, Your Honor. Mr. Hood? Good morning, Your Honors, and may it please the Court. In Mr. Harris's case, the district court properly had jurisdiction to educate the petitions and addenda on supervised release based on a combination of two major legal principles. First is the Supreme Court's case of Johnson, which we've discussed at length here, as it's been interpreted by other courts, particularly in the Fourth Circuit, Winfield. And Johnson said several important things. One, in analyzing Congress' use of the term revoke instead of terminate, it observed and held that there's something about the term of supervision that continues past revocation. And in Johnson as well as Winfield, the courts have said that during service of that revocation sentence, the original term of supervision continues to exist. So while Mr. Harris was serving that 30-day period of a revocation sentence, his original term of supervision was ongoing. It was existent. Couple that principle with the statutory authority under 3583I, which says that the court has jurisdiction to adjudicate a later date after supervision violations that may have occurred during that term provided that a summons or a warrant issued during that term. So in this case, there was an original petition that was filed in September and that was based on information provided to the probation officer. It wasn't based on an arrest or an indictment. It was based on information provided to the probation officer that Mr. Harris had committed a crime. And that was before he was ever revoked for the technical violation. Let me ask this. What is your claim for the basis of jurisdiction? Is it that this incident occurred before the court first took up this revocation matter? That the fact, the operative facts, occurred before the court took up this revocation matter? Is that the basis or is it that the court just, since it had him at one point, it has him as long as any play out of that? Which is your basis? Your Honor, it's a combination of the timing of the offense as well as the timing of the filing of the petition and the issuance of either a summons or an arrest warrant. One can If the incident had occurred completely, if it was a new incident, after the first revocation hearing, a completely new incident, operative facts, would you have the same jurisdictional basis or would it be a different basis? Your Honor, I don't believe there would be jurisdiction and now we're starting to look at facts that are similar to the Ninth Circuit case and when. Alright, now wait. So your view is the jurisdiction that you claim the court has in this case arises from the fact that the operative facts for the basis for this second hearing arose before the first hearing? Your Honor, they arose before the termination of the original term of supervision, which would be. Well, that would be before the first hearing. That would be the completion of the revocation sentence. So, I may have made that. I don't understand the court's question. I apologize. I'm just, it's a straightforward question, I hope. I think you answered it. You think the court has jurisdiction for this current matter, which is the second hearing on revocation because the incident occurred before the first revocation hearing? Yes, Your Honor, and the fact that a petition was issued and an arrest warrant. That's right. No, no, I'm not arguing with that. So, you then do put some credence and some weight in the fact this current issue was based on an addendum to the original petition for revocation, correct? Yes, Your Honor. Although we haven't argued this point, I think it's worth at least considering whether or not, from a jurisdictional perspective, if the addendum was subsumed by the petition or the petition to maintain jurisdiction. Well, if that's your view on jurisdiction, then, which I think maybe is correct, why isn't there but one revocation in this case? One revocation, not two revocations. How many revocations do you think there are in this case? Don't you think there's one revocation? Your Honor, there's something about supervision, the supervised release, as the Supreme Court noted, that was a bit metaphysical in its nature. I know all that, but I'm asking you, under your theory of this case, doesn't that lead you to say there's but one revocation here? Your Honor, yes. There was one revocation hearing, although the court used the term revoke. I know the court did. The court did, and I think the court did that in sort of a vernacular. I think maybe there was a year time difference, but the reason I'm asking you that is, then it seems to me your theory of jurisdiction is that, just as you stated, an incident occurred before the initial hearing, and now this relates, this hearing that we're reviewing right now relates back, and I think that seems correct, and you say that leads to, I think, the obvious conclusion, there's one revocation, so then why isn't there a statutory cap of the one revocation under the statute? One, there's been but one revocation in this case, and the statute says on any such revocation, you have the maximum of three years and five years total. Why doesn't that maximum now apply? Your Honor, I don't know that you can't have more than one revocation for the same term. But you said you had one in this case. That's what you just told me. Just to be clear, during Mr. Harris's second revocation hearing, the parties acknowledged on the record that we were referring, that sentence was referring to the original term of supervision, so we were discussing the original term of supervision. I don't know, Your Honor, it seems to me that you can have multiple revocations of the same term. No, you can't. No, no, no, I'm not saying you can't. Oh, no, I think you can, because you can have a violation, and then you could put him in jail for a month and extend the supervised release, and then he commits another, he or she commits another violation after that, and you can call him back in. You certainly can have multiple revocations, but the statute looks to statutory max as far as punishment for any such revocation, and I think you've said in this case there's one revocation. I think factually you're probably right. There's one revocation here, and that's why you also peg your jurisdictional claim to. Well, no, Your Honor, you can have multiple revocations. Let me follow Judge Shedd's line of questioning, because I want to be sure I understand your jurisdictional principle, because in writing opinions, the court has to settle on the principle, not just resolve a case. So, if the second incident that would lead to a revocation occurs before the initial revocation hearing, and at that hearing, the court sentences the individual to 60 days, and at the end of the 60 days, there is no more supervised release. If the petition for the second incident is then filed after the completion of that term of imprisonment, is there jurisdiction in that circumstance to entertain it? No, Your Honor, I don't believe there is, and that's based on Johnson's holding and Winfield. Well, if that's the case, then jurisdiction cannot be solely derived from the time of occurrence of the incident. It would also seem to have to be, or based on, the continuing duration of the initial revocation sentence. That the original supervised release is still continuing and that's the hook that gives the court subject matter and in personam jurisdiction over the individual. Yes, Your Honor, and that's what I've said in my response to Judge Shedd's questions. Not only is it the incident, the violation has to occur before the sentence, but the petition has to be filed and either a summons or warrant would issue. Now, there's some factual situations that can make things pretty interesting. For example, say a defendant committed one violation, had a revocation hearing, and received a revocation sentence of perhaps two years, or maybe even three years. And while he is serving that three-year revocation sentence, a new crime is discovered that happened also while the defendant was on that same original term of supervision. If you read 3583 and the courts that have interpreted the revisions of the PROTECT Act, any such revocation, so long as a petition and a warrant were issued during that lengthy revocation sentence, the court could impose another statutory max, a second revocation on what is still the original term of supervision with a long revocation sentence, the limitation being the law that's described in 3583H, which limits once revocation sentences are imposed, any follow-on supervision will basically be limited by the aggregate amount of the revocation sentence that's described. You can have two revocations of the same term of supervision in the factual scenario that I described. Wait a second now. There's no question you can, but that's not what you're saying is happening in this case. You said there was one revocation in this case. You can have multiple revocations of one supervised release sentence. You absolutely can, but you say in this case, and I think the factual scenario presents because of how the incident-operative facts occurred, I don't think you're incorrect. I think there is one revocation. Do you want to change that, or do you think in this case, not hypothetical, that you were talking about, in this case, is there one revocation or more than revocation? Your Honor, I am 90% sure I want to change, because it's my recollection, I didn't study this point particularly before coming into court, but it's my recollection that Judge Payne used the term revoke following both hearings. But that doesn't really matter, does it? What he, the term he used doesn't really matter, does it? Well, I think it does matter, Your Honor, because that was one of the points that the court noted in Winfield that Judge Hudson in conducting a bifurcated hearing, a sentence was imposed, but the defendant was not put on a new term of supervision. As long as he didn't say terminate as opposed to revoke. Right. That would make a difference. The facts in Winfield were slightly different than here, and I think that makes a difference. But, Your Honor, if my memory is correct and that's why I say I'm 90% sure, we have two revocations because the court used that terminology twice. But you changed your position since about four or five minutes ago. Well, you back me to the corner, I confess, and now as I think it through further, I believe that my latest pronouncement, that is the correct assessment of the record. So, do you think that it doesn't matter that the petition was called an amendment? You don't think that matters then? Because you don't see any distinction between an amendment to a petition and a new petition. Under your theory of two revocations, you don't see any difference in amendment to and just a new petition. It doesn't make a difference. Practically, it doesn't make a difference because all of the allegations, the technical violations, as well as the substantive violations could be in one petition. It makes a difference as to statutory maximum, though. That's the difference it makes. Because the law is on any such revocation. So it does make a difference in this case whether there was one revocation or two revocations. Yes, Your Honor. Would you talk about aggregation before you sit down? Aggregation of the sentences. Yes, Your Honor. For any such revocation, this is the language that Congress put into the Protect Act in 2003 which controls here. All the courts interpreting that said that the district court has the full statutory maximum for a sentence to impose for any such revocation. So for multiple revocations, the court can impose the statutory maximum each and every time. That doesn't mean that a defendant is going to be subject to an endless cycle of re-incarceration for the same only offense. The amount of supervision, as I mentioned earlier, is capped by 3583H. The appellant has suggested that we need to add the times. With regard to the sentence, Judge Floyd, I would say no. We don't have to aggregate the times. Aggregation does apply to follow on terms of supervision that would be imposed. I believe that answers all of the issues on appeal. I do not. Thank you. Thank you, Your Honor. Ms. Kaney, we'll be glad to hear from you some more. You've got some rebuttal time. Your Honor, thank you. I want to make two brief points in response to some questions about the jurisdiction and Judge Shedd's questions about the addendum versus the petition. In reality, different probation officers call the papers that they file to bring charges that someone has violated supervised release different things. Some probation officers call it addendum. Some call it petition, even if it's a subsequent allegation. The term that it is called doesn't make a difference provided that they're all filed within one term. It would be an arbitrary distinction to hold that whether it's called an addendum or a petition, the substance of the allegation is what matters. I also want to point the Court's attention... And so I want to be sure, you think there are two revocations in this case? You think there are two revocations? Yes, Your Honor, and the second revocation did not have jurisdiction because of when it was filed. I know. But I just said, but you think there are two revocations, each of which would have a statutory maximum? If there's jurisdiction, each would have the statutory maximum. If there is jurisdiction, the statutory maximum, you can only have one because it was violating just one term of supervised release. The statutory maximum would be limited. You could have four or five revocations of one term of supervised release, but there's only one statutory maximum. And for that, it turned to Winfield at page 112. The Court talked about the authority to impose multiple revocations, but limited to the statutory maximum. So because all of the conduct that's alleged to have occurred happened during Mr. Harris' first term of supervised release, there's one statutory maximum for all the sentences. As it relates to the jurisdictional issue as well, I want to point the Court's attention to 18 U.S.C. 3624E, which provides that while a defendant is serving a sentence of imprisonment, supervised release does not run, which I believe lends credence to the position that the supervised release term expires once it is revoked. As it relates to the government's argument about that it would be fine to bring people back years later. I don't see how you can make that statement in lieu of the findings in Winfield and Johnson, because the supervised release term did not expire upon clearance. If it was terminated, you would be right. But I just don't see how you can derive that principle from those cases. In terms of using the words, I think there's three different ways that a term of supervised release can end. One is termination, one is expiration, one is revocation. In expiration, the time runs out. The clock supervised release starts, you get to the end of the actual term, and it expires. The Court no longer has jurisdiction. In termination, there's a more formal order from the Court. Maybe it's that the Court is terminating supervised release before the full term of supervised release, because the person has done well. Revocation is a way to end the supervised release, but it means that there's more to follow. Maybe there's imprisonment, almost always there's imprisonment with a revocation, but maybe there's also supervised release to follow. As that relates to the government's argument about the rule to bring people back for things that occurred before the revocation, but were not found until later, if we follow that rule, we end up with a situation where if there's a Class A felony, the person is sentenced to five years of imprisonment for the revocation. The Court then would have jurisdiction to bring, the preparation officer could file a petition at four years, 364 days to say that four years, 365 days ago that the petitioner forgot to file some monthly reports. Our position is that that's not a tenable rule in this case, and we thank the Court for its time. Thank you very much. We'll come down and brief counsel and move on to our second case.
judges: Dennis W. Shedd, G. Steven Agee, Henry F. Floyd